Arduous. We've read your briefs, we're familiar with the cases you're relying on, so please give us your best argument. All right, the first matter is United States v. Courtland Turner. Mr. Peterson. My client last August received a six-month sentence, as you know, for possession of 15 or more unauthorized access devices. He received that sentence after a conditional guilty plea. The conditional guilty plea was conditional because he had raised by a motion to suppress the same two issues that are before the court. So those issues are, in simple forms, whether the warrantless seizure of a bag of gift cards was constitutionally permissible, and whether the subsequent in-depth electronic search of the contents of the warrant. At the motion to suppress hearing, evidence was presented by the arresting officer. In the trial court's findings and conclusions, he failed to recognize, the court failed to recognize, the difference between consent to search and consent to seize, and that's why we're here today. What the trial court did and what the trial court found was that the, when the officer said, may I see what's in the bag, and the driver handed the bag to the officer, that that was consent to search. Was it a clear plastic bag? It was not. Not clear. Correct. And so . . . How did the officer know there were gift cards in it, only after he seized them? I thought he knew, he saw that they were gift cards. He did not. Where's that in the record? The record shows on page 89, I believe, that the bag was underneath the seat, so he would not have been able to see them. Well, how'd he know they were there? I thought this was a plain piece of paper. They were partly visible. A bag was partly visible under the passenger seat. But then once he saw the bag, if the bag wasn't clear, as you're saying, how would he have known? Because I thought there's all this stuff he knew, gift cards can be used by drug dealers, etc. He asked to see in the bag, and the driver said, sure, and handed him the bag. That's what the evidence, that's what the testimony was. So what the court concluded was that the handing of the bag for purposes of seeing or searching the contents of the bag was tantamount to saying, okay, you may also seize them. In other words, take them with you. And the Fourth Amendment clearly has the dichotomous language of it protects against both searches and seizures, and one does not imply that the other was consented to. The government's response in their brief points out three things in support that consent to seize was given. They again reiterate, well, he gave consent to search. Therefore, that implies consent to seize. We would argue that that's not a valid argument. By search, you mean look in the bag, or do you mean run the magnetic strips? Look inside the bag. That's the search. That's what he consented to. The officer said, what's in the bag? He hands him the bag. That's merely a consent to search what's in the bag, to see what's in the bag. In other words, for officer safety, this is why you would want to ask. This is why a reasonable officer would ask, what's in the bag? It's late at night. He's got two guys on the side of the road. One guy's got a gunshot. Injury is in the record. So it's reasonable for the officer to say, what's in that bag? In other words, is there a gun in that bag? So he looks in the bag, and he sees the gift cards. So that's when he starts asking questions about the gift cards. But again, going back to the government's response of whether or not that was consent to seize the bag, when they say three things, consent to search was supportive of consent to seize, that he voiced no objection to the seizure, and that he signed an inventory form. Well, we all know how this comes down because it's in the record. What's in the bag? Okay, I'm going to take this bag. I need you to sign this because it's in my inventory of what I'm taking. Acknowledge this is what I'm taking. That's what an inventory is. It's not an I consent to a seizure. And no objection to put the honest on a person on the side of the road whose officer is saying, I'm going to take this stuff, sign this inventory form, and go, well, wait a minute, wait a minute. I object to that. That's not reasonable. That's not what people do. That's not normal in life. Well, isn't it also reasonable to imply seizure under the facts you just related? I would not think so at all, Your Honor, because you can come up with a myriad of circumstances. Let's say a man's walking down the road. He's got a backpack, and it's his whole life on his backpack. He's living on the streets. And the officer says, may I see what's in your backpack? And he shows him the backpack. He goes, okay, I'm going to take this with me. It's all his clothes. Everything's in there. He's going to take it with him. So by saying yes, you can look inside. We don't know why he stopped the man with the backpack, but this is a series of incidents, the stopping, the gunshot wound, the bag under the thing, the authorization to look at, search what's in the bag. Why else would he want to do it if the guy wasn't saying, implying anything in there you can take? Because of the words the officer used. The officer would say, may I see what's in the bag? Yes, you may see what's in the bag. That was the transaction that took place. That's not may I have the bag, may I take the bag. May I see what's in the bag. Because under that fact situation, he's wanting to see, probably he's wanting to see what's in the gun in the bag. Because of the totality of circumstances, gunshot wound, late at night, side of the road, that's officer safety. That's what we always hear on these types of cases. Well, I wanted to see for officer safety. So I don't see how we can conclude that consent to search the content of a bag is consent to seize what's in the bag. Not based on these facts. I would also point out the additional facts that the officer never requested consent to seize. Now, if you're going to ask for consent to search and then you decide to take them, you should ask for consent to seize. We need to distinguish the difference between search and seizure. Again, the trial court jumbled these two separate issues together, as did the arrested officer. The arrested officer's testimony was basically, well, he handed me the bag. Therefore, when I asked him if I could see what's inside, therefore, he's consenting to the seizure. That's just not true, and that's really the main point of this issue. Is consent to search the content of a bag equal to consent to seize it? And our position is it is not because the Constitution clearly says those are two separate rights. So the standard of review that this court has, of course, is clear error, and the question becomes, did the trial court clearly error when it concluded that consent to search was equal to consent to seize? And our argument is that was clear error because those are not one and the same. The seizure of the bag could also have been accomplished through probable cause. So if I may, I'd like to address that issue. In the Record on Appeal, page 133, the officer's testimony was he felt that he did not have probable cause to search the car. This was after he viewed the contents of the bag that showed the 143 gift cards. He did not feel that that was sufficient evidence that a crime had been or was about to be committed that allowed him to search the car. He testified to that. So if the legality of the gift cards was immediately apparent, which is what's required, then he should have felt that he had the right to search the car. He also, he felt that he did not have probable cause to, at that time, to seize the gift cards. So if the legality of the gift cards was readily apparent, he should have felt that he could have seized them without the consent, but he asked for consent to search and felt that that was consent to seize. He was confused as well as the trial court was. The, on the specific facts that the government could argue support under the totality of circumstances that probable cause existed, the trial court found six facts to be of importance. If you recall in the brief, excuse me, seven. The driver had no driver's license and there was no visible license plate. Under the totality of circumstances, putting the facts together, they must not be so disjointed that they don't create a cohesive message that probable cause existed, crimes being committed. The fact that a person has no driver's license and no visible license plate cannot be supportive, even under a totality of circumstances, that a crime was being committed. The bag was concealed under the seat was one of the factors the trial court found. And the second issue regarding whether or not there's a reasonable expectation of privacy in the contents of those gift cards, one could argue that the contents, the concealing of a bag under the seat is certainly argumentative or suggestive that one had a reasonable expectation of privacy. We'll get to that later. But in this case, the trial court used it as some evidence of probable cause. And, again, I think we have to ask ourselves, does that have any weight at all, that somebody traveling down the road would put a bag under their seat as opposed to putting it under their feet or somewhere else?  What about the issue of your client's standing to raise these questions because it was the driver, not the passenger, that consented at least to the search? Yes, Your Honor. And we – the issue of standing was discussed both in the trial court's order and in the appellant's brief. And the trial court found that there was standing because a passenger had equal access to that bag. The bag was under the passenger seat. That's where the passenger was. And the driver said, we buy cards and sell them, meaning we both jointly possess them.  So going back to the factors that the trial court found significant, which although the trial court did not address the issue of probable cause, finding that there had been consent to seize, he did find factors relevant. And two more factors he found relevant were that the gift cards were purchased from a third party and there was no receipts. Well, the officer in his testimony says, no, I wouldn't have expected somebody who bought gift cards from a third party to have receipts. So how can we even suggest that under the talentive circumstances that those would have any weight at all as well? So what it boils down to in this case is was there probable cause to seize because somebody had a bag full of gift cards. They had an outstanding warrant for simple possession of marijuana. They had items in the car that they had purchased. And one of the fellows had a woman. That's really what the question boils down to was there probable cause. Now, this is a de novo review that this court will do. And some of the questions that I would ask the court to consider is this. In analyzing these factors, number one, did race come into play on this? These were two African Americans in the car late at night. This was a white officer. Is that in your brief? I'm sorry? Is that in your brief? It is. Well, I'm sorry. It's in the original motion to suppress. It was pointed out with particularity. But it's not in your brief to us. I don't recall if it was or not, Your Honor. All right. Well, if it's not in there, you can't argue it now. And so moving to the next point then, which would be issue number two on the electronic search, if I may address that now. And the question becomes, did the appellant have a reasonable expectation of privacy in the electronic content of the gift cards? That's the issue there. There's no evidence in the record that there was or was not personal information on the gift cards. So we start with that. Isn't it your burden to establish a reasonable expectation of privacy? It is. So if there's no evidence about personal information, doesn't that cut against you? It does cut against me, but it's not dispositive of that because there is some information in the record to support that there was a reasonable expectation of privacy. Number one, gift cards have a certain amount of money that's on them. That's personal information. It's nobody's business whether or not somebody goes to a place like Victoria's Secrets and buys $2,000 worth of gift cards. That's something that may be personal to somebody.  The type of gift card that the person has, that's something personal. How you spend your money is personal and it's not subject to someone else's interests. It's public information. It's present on the card. It's viewable. There's no expectation of privacy. Well, I understand that that is one argument, Your Honor. The other thing is if, by analogy, if I could maybe point out that we all recall back in the 90s we would get those AOL discs and it was to, this is how you can get online, put it in your computer. What people did, as we all know, is we would blank them and then we'd use the AOL disc and then we would put personal information on them. All electronic devices can store personal information. We would be guessing that there's no personal information on these gift cards. It's hard to prove there is. Well, I don't believe I have to prove that there is. I think I have to prove that there was some reasonable expectation of privacy. And those three factors that I pointed out show that there was some reasonable expectation of privacy. And I'm suggesting that there may be even more expectation of privacy than that. All right. You've saved some time for rebuttal. Mr. Gay. Good morning. May it please the Court. I'd like to begin by discussing the seizure aspect of the case and then turn to the second issue on reasonable expectation of privacy. On page 10 of our brief, we set out the officer's testimony. And specifically, the officer is asked, did you feel that any of the passengers or the driver consented to you seizing those gift cards? Yes, the driver did. The operator of the vehicle consented to the seizing of the gift cards. All right. After he handed you the gift cards in that video and agreed to the search, did you present him with an inventory for them? Yes, I did. I think the record is quite clear that there was valid knowing consent in this case by someone who is properly in position to give that permission. And I don't believe, quite narrowly speaking, that the defendant in this case can challenge the consent given by his co-defendant. But even if he could, I think it's quite clear from the record that voluntary knowing consent was given to the seizure and subsequent search of those gift cards. No attempt was made. Mr. Turner had an ownership interest also. Didn't they supposedly own them together? There is testimony that we got them from a third party. That's correct, Your Honor. To the extent that there is a recognized ability for a passenger to challenge the seizure, it, I think, in this case, at least, gives way to, in the end analysis, to the fact that the co-owner could properly give consent and that at that point the officer was free to take those items. And so the answer to the question was the officer saw ice cubes spilt on the floor of the car, which raised his suspicion when he looked in the car. And then he saw the bag kind of tucked underneath there. He could not see what was in there. And it was clearly only after the defendant, the driver, excuse me, handed him the bag and he looked inside that he determined what was in there. And what was in there was 143 gift cards. And so I can get to a couple of cases that later talk about how 143 gift cards, in and of themselves, at least one court in the Baugh case, which is cited in our brief, the courts found that there's probable cause to believe that fraudulent activity is afoot. That coupled with the fact that they say we buy them from a guy, we don't have receipts, one of the passengers obviously has a warrant out for his arrest, all of that, I believe, amounts to an amalgam of probable cause. And it's ‑‑ Well, distinguish between, again, probable cause to search and probable cause to seize. Well, I believe that the probable cause, well, number one, I believe that once the seizure was complete, there's no reasonable expectation of privacy, so the search is of no ‑‑ there was under a Fourth Amendment analysis an analysis of the cards, but I don't believe it rises to the level of an impermissible search under the Fourth Amendment. So I believe ‑‑ Assuming the search is okay, where is the consent to seize? The consent to seize is based upon the officer asking, and he testifies, the operator of the vehicle consented to the seizure of the gift cards. He testifies to that on the record. So I don't think there's any doubt that the officer lawfully was in position to exercise dominion and control over those cards, and he provides an inventory right at that moment to the defendant. So I believe that the seizure was either, number one, pursuant to consent, and number two, pursuant to probable cause. And we make both of those arguments in our brief, and I think probable cause is far less than certainty. In the Baugh case ‑‑ Probable cause comes in as part of the plain view exception, right? In probable cause to seize, you're relying on the plain view exception? I believe that we're relying on the totality of the circumstances, and particularly the number of the cards and the attendant facts surrounding what the officer had learned during the investigation. I understand to get to probable cause, but what's the reason why there's not a warrant requirement for seizing? Assuming there's no consent. I understand you're saying there's consent, but assuming there's no consent, I thought you were relying on the plain view doctrine, which says if you have probable cause to believe it's incriminating evidence, you can seize it without a warrant, no? Well, in a traffic stop such as this, I believe that the officer, upon seeing what he believes to be contraband, based upon his training and experience, can seize an item on the roadside without a warrant. For the automobile exception? Well ‑‑ That's for their search. What cases are you relying on that say that? I thought you were relying on the plain view exception. Well, I believe that the officer can seize an item based upon his experience and training that he recognizes under the circumstances would be criminal activity. And, of course, he has to do an inventory of that item as well. And on the roadside there, I suppose it would be technically possible, but I don't think it would be required. It's not an inventory search. They let these guys go, I thought. Inventory search is when you take the car. Turner was arrested and taken to jail, I believe. I don't believe he was free to go. Did they take the car? That's what an inventory search usually is. The car was not taken. Just the list of the items seized from him. They signed for the cards. The inventory was for the gift cards. That's correct, Your Honor. That's correct. So probable cause is a common-sense determination. And essentially this was really a fallback argument, that the officer, based on his experience and training in their cases, in fact, there's never been one case that I could find on this area that has found that an officer couldn't seize the contraband, that is, gift cards, credit cards. They lump them together, by the way. Very often you'll find credit card, debit card, and gift cards all in the same bag. This case is just a little bit unusual because they're all gift cards. Where were they from? I can't remember. They're from a variety of merchants, HEB, Walmart, I believe. They were able to subsequently go back and get video of them actually making the purchases of those cards once they had discovered where. So they were able to link them up to having obtained those cards. The testimony they bought them from another individual is false, actually. And so the scheme, as I understand it, is that you replace the magnetic information with different information, stolen credit card numbers. Change the amount, right? Yes, exactly. And so, number one, I believe we have consent. And number two, I believe we have probable cause to believe that we have contraband and that the officer can seize contraband that he recognizes in his presence. Turning to the reasonable expectation of privacy. There are a host of cases that have addressed virtually this exact issue. And there's a recent case from June 8th called Delisle. It's out of the Eighth Circuit that is probably the closest to on point, but it really is a collection of law that has come before, so it's not particularly new. And so the main thing regarding the expectation of privacy is that with a gift card, there is literally no personal information to you, the defendant or any citizen, on that card. It is simply the information necessary to complete the transaction when you present the card to the merchant, and anything that you knowingly have to display is not subjectively reasonable that you would have an expectation of privacy in the information that you would have to convey. There is no information that would be unique to an individual that they would have any reason to have an expectation. What is exactly on the gift cards? I mean, I know credit cards have, like, your name and address. You're saying that's not on a gift card. What is on a gift card? From what I have read in the cases that there are three magnetic lines on any reader, and basically there's going to be an internal account number for the merchant and a PIN number also contained on the card. The cases are clear, at least as to debit, credit, and gift cards. They kind of lump them together, that none of the information contained on the magnetic strip is different from the information that's contained on the front of the card. In fact, you could complete a credit card transaction by just using the information on the front of the card, which is the account number, the expiration date, the name of the individual, and the three-digit CIV code. Is it correct that gift cards do not have names? I do not. That's correct, Your Honor. There is no name associated with the gift card. They are unique. They are not unique to an individual. They are simply unique to the merchant that sells them to the public. So are these, like, gift cards from Walmart or gift cards from Visa that you could use anywhere or both? They were both, I believe. And I think there was also a gas card company in there. And so in the totality of the circumstances, I think it's quite clear that no court has ever recognized an expectation of privacy, at least that society is willing to recognize as objectively reasonable. Even if a defendant had a subjective interest, society is just not prepared to go there. Finally, to the extent that the cards contain fraudulent information, the courts have never recognized a reasonable expectation of privacy in what would essentially be a contraband card. Because the information itself, in this case, for example, where the cards have been altered, a criminal defendant has no reasonable expectation of privacy that their criminality will not be discovered. That's part of what the courts have essentially held, that as part of the analysis, you would not have a reasonable expectation of privacy in the fraudulently created or counterfeit cards once you had altered them. So number one, you have to necessarily relinquish the information to the merchant to complete the transaction. And as such, and at least under the unique facts of this case, there is no personal identifiable information contained on the magnetic strip of a gift card. All right. All right, if there are no further questions, I will yield back my time. All right, we'll take it. All right, Mr. Peterson. Mr. Peterson. Regarding the issue of consent and whether or not the driver consented to the seizure, the record on appeal, page 129, is the examination of the officer by the government in this case, and he's asked, did you feel you were given consent to seize the items? And he said yes, but then the government attorney summarizes, well, he handed you the gift cards, that's shown in the video, and he agreed to your search. So even in that instance, they're mixing up consent to search and consent to seize. So to argue that because the officer said he was given consent to seize, that doesn't mean he was given consent to seize. What effect does the making of the inventory and the accepting of that inventory by the driver, doesn't that imply consent to seize? Not at all. The seizure had taken place. An inventory, the purpose of an inventory is to acknowledge that certain items have already been seized. The seizure took place. To make an objection after the seizure took place also is not supportive of consent because the seizure had already taken place. I've seized it, sign here. Now you're supposed to object? You've already seized it. That's after the fact. On the reasonable expectation of privacy in the information embedded in the gift card, what indication is there that the average person, one, even knows what information is on there, or two, knows that you're able to actually change that information if you get some type of technology? I don't know the answer to that, but I do know this, and we all know this, and this was argued in my brief. On credit cards and debit cards, the banks have now put chips in there. Why? To protect the personal information within the debit and credit card. So to draw an analogy that gift cards and debit cards and credit cards don't have personal information, that's not true. It does. Why would we put the chip there? And, again, we're guessing that there's no personal information on a gift card. How convenient would it be for somebody that my kids know this better than I do, but you can take all kinds of electronic storage devices, wipe them clean, and put personal information on them. So you could put. . . Aren't the chips to make credit card fraud less easy? I mean, it's harder to make a card with a chip than it is with the. . .  . . . . . . . . . . . . . . . . . . . . . . Is it not personal what kind of gift card you have? Why would it be personal? These are, like, 10 different kind of gift cards. Well, I don't want my neighbor to know what I'm buying. But you had a by at the store and give it to a cashier and say, I want this $100 card. Well, that's one person but that's not the government. The government has no right to look into that, not without a warrant. Okay. That's our position. All right. Thank you. We have an argument.